IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 2, 2016

## MARCUS THOMAS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County
Nos. 13-01979, 13-05638   James M. Lammey, Judge**

_____

**No. W2015-02499-CCA-R3-PC  -  Filed November 7, 2016**

_____

The Petitioner, Marcus Thomas, appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of counsel and entered an unknowing and involuntary guilty plea.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT L. HOLLOWAY, JR., JJ., joined.

Seth M. Segraves, Memphis, Tennessee, for the Petitioner, Marcus Thomas.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Glen C. Baity, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On April 30, 2013, the Petitioner was indicted by a Shelby County Grand Jury on one count of aggravated robbery in Case No. 13-01979.  On November 19, 2013, while released on bond, the Petitioner was again indicted on one count of aggravated robbery and two counts of unlawful possession of marijuana with intent to sell or deliver in Case No. 13-05638.  On December 10, 2013, the Petitioner entered a guilty plea to two counts of aggravated robbery, for which he received an effective sentence of sixteen years.  Pursuant to a plea agreement, the State dismissed the two remaining counts of unlawful possession in Case No. 13-05638 as well as the entire indictment for a third case, which included two additional counts of criminal attempt to commit aggravated robbery.

**Guilty Plea Hearing.**  At the beginning of the December 10, 2013 guilty plea hearing, the State requested a proffer of evidence from the Petitioner, which had not been discussed with trial counsel prior to the hearing.  After trial counsel conferred, the Petitioner answered a series of questions about the crimes he was charged with, including questions about his co-defendants.  The State then proceeded to summarize the underlying facts as follows:

> [O]n November 8th, 2012, [the first victim] was robbed at gunpoint as he worked as a clerk at Fuel and Wash located at 4509 Stage Road, Memphis, Tennessee.  The doors were locked.  A male came in to order a Black and Mild.  That was actually one of the co-defendants listed as spoken by the [Petitioner].  Then Darius Cox went in and held the door open.

> [The Petitioner], according to his own statement[,] participated in the planning; and according to other co[-]defendants actually provided the gun to Temoccio Wells.  Temoccio Wells went in and actually robbed the store at gunpoint.  They took several dollars – approximately six hundred dollars and had already agreed to split the proceeds.  The police caught them just a couple blocks down the road.  I believe all parties gave at least somewhat of a confession in this, at least limited to facilitation.  So, they all were involved and all did agree as pointed out by Your Honor.

> …

> …[O]n July 23rd, 2013, around 1:00 p.m., [the second victim] was at Johnson and Johnson Circle.  He was confronted by an unknown male black armed with a revolve[r] – thirty-eight revolver.

> Armed suspect.  It was a juvenile who demanded his property and made him remove his pants.  Suspect then fled the scene with the victim's pants and property leaving in a Jeep Cherokee.  Officers checking the area located a Jeep Cherokee matching the description given by the witnesses – the victim – stopped it at 3703 Jackson here in Memphis/Shelby County.

> Officers located three suspects in the vehicle, I believe two of which were juveniles, one of which was the gunman.  [The Petitioner] admitted to being involved.  [The Petitioner] admitted to being involved and again participating in the planning and, as with several other cases, actually had a victim go in and do the worst of the dirty work with the gun.  The victim

was [sic] stolen some cash, a pair of pants, and twenty-four point six one grams of a green leafy substance that tested positive for marijuana.

And, again, [the Petitioner] gave somewhat of an admission to that as well.

The Petitioner's counsel, on behalf of the Petitioner, stipulated to the State's recitation of the facts and requested that the trial court accept the negotiated plea agreement. The trial court then engaged in an extensive voir dire with the Petitioner regarding his right to plead guilty and noted that, as an initial matter, the court had "talked at length before" with the Petitioner about "all the possible things [he] could be facing." The trial court also noted that it had previously told the Petitioner the court "wouldn't accept a negotiated plea," and that, subsequently, "[the Petitioner] set [his] case for trial." However, the Petitioner's counsel "was persistent in pursuing [the trial court] to change [its] mind" and allow the Petitioner to change his plea from not guilty to guilty. The trial court agreed to accept the Petitioner's guilty plea, and proceeded to explain to the Petitioner the rights he would be giving up by pleading guilty, including his right to a jury trial, his right to plead not guilty, his right to confront witnesses, his right to compel or subpoena witnesses, his right to testify, and his right to an appeal. The Petitioner indicated that he understood these rights and the plea agreement. The court asked the Petitioner if he had ever entered a guilty plea before or "anything in a court of law," to which the Petitioner answered "No, sir." The court then asked the Petitioner the following series of questions:

COURT: By signing this document, waiver, you're waiving your rights away…and you're saying, "I don't want these rights. I want to accept the [S]tate's offer, and I want to plead guilty.["] Is that what you want to do?

PETITIONER: Yes, sir.

COURT: Are you doing this of your own free will?

PETITIONER: Yes, sir.

COURT: Do you have any questions at all about what you're doing?

PETITIONER: No, sir.

COURT: And again, are you doing this freely and voluntarily?

-3-

PETITIONER:        Yes, sir.

Following the hearing and upon concluding that the Petitioner's guilty pleas were knowing and voluntary, the trial court accepted the Petitioner's guilty pleas. Almost a year later, on November 24, 2014, the Petitioner filed a pro se petition for post-conviction relief, alleging, inter alia, that his guilty pleas were involuntary and unknowing as well as several grounds of ineffective assistance of counsel. After the appointment of counsel, an amended petition was filed on May 20, 2015. A hearing took place on December 16, 2015, and the post-conviction court subsequently entered an order denying relief on all grounds.

**Post-Conviction Hearing.** Trial counsel testified that he had practiced law in Shelby County for ten years and began representing the Petitioner in August 2013. Trial counsel testified that he represented the Petitioner until his guilty plea in December 2013 and that he met with the Petitioner approximately three times in jail and four times before scheduled court dates. Trial counsel was representing the Petitioner on three separate indictments, and he specifically recalled going over various statutes for criminal responsibility, criminal facilitation, and aggravated robbery with the Petitioner. Trial counsel testified that he had not received discovery from the State regarding the charges in one of the Petitioner's three indictments, and that the Petitioner's other two indictments had "been up for a little bit" and "were set for disposition." Trial counsel noted that the trial court "wanted [the Petitioner] to make a decision" and that "[p]art of [the Petitioner's] offer was a package on all three [indictments] even though the third one hadn't come up yet."

On cross-examination, trial counsel testified that, while the Petitioner understood the concept of criminal responsibility, "[the Petitioner] didn't agree with it." Trial counsel stated that the Petitioner had asked for more time to consider the plea agreement but that the trial court "didn't want to give [the Petitioner] any more time because he had already given him several dates." Trial counsel noted that "[i]t took several times talking to [the trial court] to even convince him to accept the plea," and that the Petitioner "went back and forth a lot on whether or not he wanted to enter a guilty plea or go to trial," but on the day of the guilty plea, "[the Petitioner] said he wanted to take the plea." Trial counsel testified that the Petitioner never indicated that there was anything else he wanted counsel to do, such as interview witnesses, investigate facts, or obtain discovery. Trial counsel also confirmed that "there [was] a confession according to the testimony in the preliminary hearing" regarding the charges in the Petitioner's third indictment, which was the indictment lacking discovery.

-4-

The Petitioner testified that he was never given discovery for one of his indictments and claimed that trial counsel never reviewed the elements of the offenses for him. The Petitioner alleged that trial counsel only visited him twice in jail but agreed that trial counsel also met with him on his court dates. He maintained that he did not understand what "criminal responsibility" or "perjury" meant, although he later clarified when questioned by the court that he did learn what perjury meant a few weeks prior. The Petitioner claimed that trial counsel told him on the day of his guilty plea that, if he went to trial, he would get a sentence of thirty-six years, but that trial counsel did not explain why. The Petitioner also testified that trial counsel did not give him any legal advice or talk to him before he gave his offer of proof before his guilty plea. In total, the Petitioner claimed that trial counsel spent only one or two hours with him on his case.

On cross-examination, the Petitioner acknowledged that, after pleading guilty to the two charges in December 2013, he also plead guilty in another aggravated robbery case in September 2014. However, the Petitioner claimed that, while he understood the 2014 guilty plea, he did not understand the two instant guilty pleas entered in 2013. The Petitioner also acknowledged that he was allowed time to consider his guilty plea and that he had changed his mind and decided to plead guilty after speaking with his mother.

The State read the Petitioner his testimony from the guilty plea hearing transcript, and the Petitioner confirmed his previous answers were accurate. When asked why he did not tell the judge that he felt his trial counsel was ineffective, the Petitioner stated that he "didn't know when [he] had the opportunity or what to do." When asked why he answered the question under oath, the Petitioner stated that he "didn't know nothin' about no [sic] under oath" and that he "didn't know anything about the court system, period." However, the State noted and the Petitioner confirmed that he had an extensive juvenile criminal record spanning from 2004 to 2010. When asked if he was forced to plead guilty, the Petitioner answered, "I wouldn't just say forced me, but told me, yeah." As to trial counsel's specific deficiencies, the Petitioner claimed that he "didn't do any motions for me," such as a motion to suppress "all the evidence." The Petitioner maintained that trial counsel was also ineffective because he did not obtain the discovery for Case No. 13-05638. The State asked the Petitioner whether it was true "that [the Petitioner] gave a statement of admission participating in this robbery [in Case No. 13-05638]," to which the Petitioner responded that he was "done talking," before eventually confirming that he did give a statement of admission. The Petitioner also admitted that his plea bargain was beneficial to him because he had multiple other charges dismissed as part of the deal and because he received a sixteen-year sentence rather than the almost forty-year sentence he would have faced at trial.

After the Petitioner was examined by trial counsel, the post-conviction court asked him a series of questions. The Petitioner admitted to the court that he had lied at his

guilty plea hearing. The Petitioner continued to maintain that he had never entered a guilty plea before the instant case, however, the court pointed out that the Petitioner had indeed entered multiple guilty pleas from 2011-2012. When confronted about these guilty pleas, the Petitioner told the post-conviction court that he "changed his mind" about never entering a guilty plea before.

Regarding trial counsel's representation, the court found that, under the Strickland standard, he "didn't do anything wrong in this case" and "[h]e gave [the Petitioner] a heck of a deal." The court explained that "[trial counsel] knows the court, and he knows if you're convicted [of] all three of these [indictments] that you would not have gotten eight years . . . [trial counsel] worked doubly hard to get me to accept this guilty plea because he knew that you were going to get thirty-six years."

The post-conviction court set out its oral findings and denied the Petitioner relief, finding that trial counsel provided effective assistance and that the Petitioner's guilty pleas were knowingly and voluntarily entered. The court also explicitly accredited trial counsel's testimony and discredited the Petitioner's testimony, noting that the Petitioner admitted to committing perjury at the plea hearing. The court specifically stated that "I don't believe a single word [the Petitioner] has to say. I find him totally incredulous." The post-conviction court subsequently issued a written order denying relief on December 16, 2015.

A few months after the notice of appeal was filed on December 22, 2015, the Petitioner's appellate counsel filed a motion to withdraw, indicating that the Petitioner wanted to proceed pro se, and this Court remanded the matter to the post-conviction court for a determination on whether the Petitioner knowingly and intelligently waived his right to counsel. On April 1, 2016, the post-conviction court entered an order stating that "[the Petitioner] indicated that he did not wish to proceed pro se, and would willingly proceed with counsel of record." This timely appeal now follows.

## ANALYSIS

The Petitioner asserts that he received ineffective assistance of counsel and that his guilty pleas were involuntary and unknowing.[1] He argues that trial counsel's performance was deficient based on his failure to obtain discovery for one of the Petitioner's three indictments and his failure to "explain the Boykin [and], Mackey

---

[1] The Petitioner specifically frames the issue as "whether the [Petitioner] entered a knowing, intelligent, and voluntary guilty plea with the benefit of effective assistance of counsel." We understand the Petitioner's one issue statement to in fact raise two issues. Thus, the issues have been separated and reordered for clarity.

-6-

requirements"[2] to the Petitioner.  The Petitioner further contends that the trial court erred by failing to instruct the Petitioner "of the consequences of false testimony before garnering a proffer during the guilty plea" and that, "[h]ad [the Petitioner] reviewed the discovery or been properly advised of his rights, a reasonable probability exists that the [Petitioner] would have proceeded to trial."  The State responds that the Petitioner failed to establish that trial counsel's performance was deficient and that the Petitioner "failed to show that he would not have entered his plea but for the alleged errors of counsel," and that the post-conviction court properly denied the petition.  Upon review, we agree with the State.

We begin our review of these issues by acknowledging that post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right.  T.C.A. § 40-30-103.  The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise.  When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve.  The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011).  A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence.  T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009).  Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it.  Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

**I. Ineffective Assistance.**  In Vaughn, the Tennessee Supreme Court repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel

---

[2] See Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)); See State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977) superseded on other grounds by rules as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000).

is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [Petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial. Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

The Petitioner contends that trial counsel provided ineffective assistance based on his failure to obtain certain discovery and prepare the Petitioner for his proffer of evidence, among other allegations. Trial counsel admitted that he did not receive the discovery for the Petitioner's third indictment because the plea agreement the Petitioner accepted "was a package on all three [indictments] even though the third [indictment] hadn't come up yet." Trial counsel also testified that the Petitioner had never expressed concern about the discovery before entering his guilty plea and that the Petitioner had made a confession regarding those charges. The Petitioner argues in his brief that "[a] reasonable probability exists that, had [the Petitioner] been provided discovery on one indictment, he would have proceeded to trial." However, the Petitioner provides no

factual support or authority for this broad statement. The Petitioner neither specifies what discovery he wanted, nor describes how the discovery would have affected his decision to go to trial. Accordingly, the Petitioner has failed to establish deficient performance or prejudice resulting from trial counsel's failure to request the discovery.

The Petitioner also claims that trial counsel failed to adequately prepare him for the proffer of evidence presented prior to his guilty pleas. However, the Petitioner provides no support for this allegation either. At the beginning of the guilty plea hearing, the State requested a proffer as part of the plea agreement and told the court that the proffer was asked of the Petitioner's counsel "at the last minute." The record reflects that there was a subsequent pause in the proceedings, that counsel conferred, and that trial counsel spoke with the Petitioner. The State then announced to the trial court that an agreement had been reached and briefly questioned the Petitioner, primarily about the Petitioner's various co-defendants. The Petitioner has not alleged that his proffer testimony was coerced or otherwise falsely given. The record reflects that trial counsel did not have advanced notice that a proffer would be requested and that he did speak with the Petitioner, although the record does not reflect the substance of the conversation. Accordingly, the Petitioner has failed to show how trial counsel failed to prepare him for the proffer in this case.

The Petitioner also briefly lists other reasons that his trial counsel was ineffective. The Petitioner claims that trial counsel "did not go over the elements of the crimes with [him]," "did not draft any motions in these cases," and generally "did not provide reasonable professional assistance." However, the only proof in support of these claims was the Petitioner's and trial counsel's testimony. The post-conviction court accredited trial counsel's testimony and completely discredited the Petitioner's testimony, and we do not review a post-conviction court's findings of fact or re-weigh the court's determination of witness credibility. See Vaughn, 202 S.W.3d at 115 (Tenn. 2006). Accordingly, we agree with the post-conviction court and conclude that the Petitioner has failed to establish deficient performance or prejudice. He is not entitled to relief.

**II. Guilty Pleas.** The Petitioner next alleges that his guilty pleas were not knowing and voluntary. The Petitioner specifically claims that he was not advised of his rights under Boykin and Mackey and that he was not adequately warned of the consequences of giving false testimony under oath.

The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010). To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. Id. (citing Mackey, 553 S.W.2d at 340 (Tenn. 1977) superseded on other grounds by rules as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady

v. United States, 397 U.S. 742, 747 (1970); Boykin, 395 U.S. at 242-44 (1969)). "[T]he record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]" Mackey, 553 S.W.2d at 340; See Tenn. R. Crim. P. 11(b)(1). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Lane, 316 S.W.3d at 562 (quoting Grindstaff v. State, 297 S.W.3d 208, 218 (Tenn. 2009)). If a guilty plea is not knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void. Id. (citations omitted).

A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . " Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). In determining whether a guilty plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship, 858 S.W.2d at 904).

The Petitioner does not adequately specify in his brief which precise rights under Boykin or Mackey he claims were violated. Rather, he appears to make a bald assertion that his guilty plea somehow generally violates the principles of Boykin and Mackey without actually articulating what the trial court allegedly failed to do. It also appears that, at some points in his brief, the Petitioner is claiming that "[t]rial [c]ounsel did not fully explain the Boykin [and] Mackey requirements to [the Petitioner]." As an initial matter, we note that the trial court is charged with performing an adequate guilty plea litany pursuant to Mackey, not trial counsel. See Matthew Dwight Webb v. State, No. M2004-00713-CCA-R3-PC, 2005 WL 1025772, at *7 (Tenn. Crim. App. May 3, 2005) (citing State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999); Blankenship, 858 S.W.2d at 904) ("The trial court is charged with determining if the guilty plea is 'knowing' by questioning the defendant to make sure he fully understands the plea and its

-10-

consequences."). Moreover, we have already established that trial counsel provided effective assistance of counsel to the Petitioner in this case.

The only specific element of Mackey that the Petitioner appears to mention is the procedure regarding perjury, which requires a trial court to inform a defendant that "if he answers [questions about the offense] under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement." Mackey, 553 S.W.2d at 341 (Tenn. 1977) superseded on other grounds by rules as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000). However, this Court has specifically held that "the issue of whether the trial court advised [the] Petitioner that his answers could be used against him in a prosecution for perjury if the statements were false is not required by Boykin and is not cognizable in a petition for post-conviction relief." Romalis Gray v. State, No. M2010-00532-CCA-R3-PC, 2012 WL 695353, at *7-*8 (Tenn. Crim. App. Feb. 14, 2012) (relying on State v. Prince, 781 S.W.2d 846, 852-53 (Tenn. 1989)). Indeed, the Petitioner acknowledges the inappropriate nature of this issue on appeal in his own amended post-conviction petition, stating that "[c]laims that a failure of the [c]ourt to advise a defendant of his rights under Mackey do not raise sufficient constitutional concerns in post-conviction proceedings." Accordingly, the issue, as presented by the Petitioner, is without merit.

Notwithstanding the Petitioner's unsuccessful presentation of the issue on appeal, we conclude that the Petitioner's guilty pleas were entered knowingly and voluntarily. Even assuming the trial court was deficient in failing to give a specific instruction pursuant to Mackey, this Court has held that the failure to mention one specific right does not automatically entitle a defendant to relief. State v. Johnny Ray Wise, No. C.C.A. 89-248-III, 1990 WL 88533, at *5 (Tenn. Crim. App. June 29, 1990) perm. app. denied (Tenn. Oct. 1, 1990) (holding that "[t]he failure to mention a specific right does not, in and of itself, necessarily preclude a finding that a plea was voluntary and intelligent."). Rather, "[i]t is better to look to the record as a whole and determine whether the guilty plea was taken as a knowing, intelligent and voluntary choice from among the alternatives then available." Id. at *5. Here, the record reflects that the trial court extensively questioned the Petitioner to confirm that trial counsel had explained the terms of the State's plea offer with him and that the Petitioner was well informed of the rights he was waiving by pleading guilty. In response, the Petitioner confirmed that he understood the terms and legal consequences of the plea agreement, that he was satisfied with trial counsel's representation, and that his decision to enter a plea was knowing and voluntary. There was absolutely no indication at the guilty plea hearing that the Petitioner was coerced into entering his plea, that he was entering his plea through fear or fraud, or that his plea was involuntary.

-11-

We agree with the post-conviction court that the Petitioner has failed to prove by clear and convincing evidence that his guilty pleas were involuntary and unknowing or that his trial counsel was ineffective. The Petitioner is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE